HARRY FELDMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77274.  Promulgated April 30, 1936.

*Floyd F. Toomey, Esq.*, for the petitioner.
*P. A. Bayer, Esq.*, for the respondent.

518

OPINION.

MELLOTT: The statute (section 601, Revenue Act of 1928, amending section 907 (a), Revenue Act of 1926), imposes upon the respondent the burden of proving fraud. We hold that he sustained such burden of proof and established, not merely by a preponderance of the evidence, but by clear and convincing proof, that the petitioner was guilty of fraud. It follows that the assessment of the tax is not barred by the statute of limitations (section 278, Revenue Act of 1924; section 276 (a), Revenue Act of 1934) and the deficiency should be approved. We shall now briefly set out some of the reasons for our holding.

The evidence clearly indicates that the petitioner received substantial sums of money which were not reported by him as taxable income. These included at least the following amounts:

| | |
|---|---|
| Net gain on the sale of corporate stock | $56, 500. 00 |
| Salary from Euclid Coffee Co | 2, 250. 00 |
| Interest from Morgan Bronze Co | 1, 660. 00 |
| Net gain on sale of real estate | 6, 000. 00 |
| Salary from Max Glick Co | 334. 18 |

It is true, as pointed out by petitioner upon brief, that the case had its inception in a bitter personal feud between Max Glick and Harry Feldman. We would be reluctant to find petitioner guilty of fraud if the proof rested entirely upon the testimony of Max Glick; but such is not the case, for we have the testimony of several disinterested witnesses which established a substantial portion of the salient facts. As a matter of fact many of them were established by petitioner. He testified that Max Glick paid him $64,000 for his shares of stock in the Max Glick Co. and introduced in evidence documents clearly indicating the receipt of such sum. He testified that "the total business [was] worth on March 1, 1913, $40,000 to $50,000." Upon this basis his one-third interest was worth from $13,333 to $16,666, so it is clear that he made a substantial profit when he disposed of it in the taxable year for $64,000; but he reported no profit.

The basis for determining gain or loss upon the sale of the stock in question was its March 1, 1913, value. (Sec. 204 (b), Revenue Act of 1924.[1]) Petitioner was taxable upon the excess of the amount

[1] SEC. 204. * * *
(b) The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property (or, in the case of such property as is described in paragraph (1), (4), or (5), of subdivision (a), the basis as therein provided), or (B) the fair market value of such property as of March 1, 1913, whichever is greater. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date.

realized over the basis. (Sec. 202 (a), Revenue Act of 1924.[2]) We have found such basis to be $7,500. The preponderance of the evidence, including the balance sheets of the company, amply supports our finding. We are satisfied that petitioner should have reported a profit of at least $56,500 from the sale of his interest in the corporation.

As to the profit derived from the sale of the real estate and buildings for $17,500, petitioner specifically alleges in his petition that he sold said real estate for said sum and avers "such sum resulted in profit to the petitioner, but the amount of such profit did not exceed the loss incurred by him in the sale of his interest in the Max Glick Company." He did not attempt to establish, either upon his return of income or by evidence before us, that the sale of his interest in the Max Glick Co. resulted in a loss to him. It might well be that his interest in the company had at one time been greater than the amount for which it was sold in 1924; but this would not entitle him to take a deduction for such loss in the year 1924, for gain or loss upon this transaction, like gain or loss upon the sale of the stock, must be measured by the March 1, 1913, value.

Whether or not the respondent has sustained the burden of proving fraud is to be determined from the entire record and not merely from the affirmative evidence presented by him. (*L. Schepp*, 25 B. T. A. 419.) It is, however, as pointed out by counsel for the petitioner in his brief, necessary that such proof be made not merely by a preponderance of the evidence, but by evidence which is clear and convincing (*Drawoh, Inc.*, 28 B. T. A. 666; *In re Locust Building Co.*, 299 Fed. 756; *George L. Rickard*, 15 B. T. A. 316). But we believe that the proof before us is sufficient to comply with this requirement.

All the revenue acts have required taxpayers to submit under oath "true and accurate" returns, "setting forth specifically the gross amount of income from all separate sources." The returns thus made constitute the basis upon which the Government relies for the collection of its revenues. It has a right to rely upon such returns being correctly made, and a wilful omission of income, or a deliberate and intentional failure to report substantial amounts actually received, if not actually constituting a fraud upon it, is at least substantial evidence tending to establish fraud. (Cf. *Joseph Carroro*, 29 B. T. A. 646; *D. C. Clarke*, 22 B. T. A. 314; *Tanner Oil Co.*, 20 B. T. A. 794; *M. Rea Gano*, 19 B. T. A. 518; *Charles F. Long*, 12 B. T. A. 488.) The evidence in this case convinces us that the

---

[2] SEC. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

petitioner wilfully and intentionally omitted from his return of income the substantial amounts set out above.

There was some testimony indicating that petitioner solicited and obtained the assistance of "an expert" in income tax matters, who prepared his return after being furnished with the details of the various transactions going to make up his income. Petitioner does not contend that he can escape the consequences of making a false return by reason of his reliance upon the "expert." The return as made was his return and he must suffer the consequences if it is false. *D. C. Clarke, supra; Grover C. Blumer*, 23 B. T. A. 1045; *B. P. Wickham*, 22 B. T. A. 1393; affd., 65 Fed. (2d) 527; *Charles E. Mitchell*, 32 B. T. A. 1093.

Petitioner contends that we committed error in receiving in evidence over his objection, a document identified as a copy of petitioner's retained copy of his 1924 return. We have carefully reviewed the circumstances surrounding the receipt of the evidence and are satisfied that our ruling was correct. The original return, filed with the collector, had been destroyed prior to the hearing before us, conformable to the acts of Congress (25 Stat. 672, as amended by 28 Stat. 933) after the Joint Committee of the Seventy-first Congress had authorized the destruction of all forms 1040 (individual income tax returns) for 1924 and 1925. When the revenue agent requested petitioner, during the course of the investigation which ultimately resulted in the determination of the deficiency, to submit to him his retained copy, petitioner did so and the agent made the copy. We are satisfied that it was an exact copy, and that the intermediate copy was a duplicate of the original. It is significant that the tax shown by the copy to be due, was the identical amount paid by the petitioner to the collector—$63.44. It is also significant that petitioner, although called as a witness in his own behalf, did not deny that the copy produced was a correct copy. On the contrary he admitted under cross-examination that after the revenue agent had completed his report, and after he had discussed it with his legal adviser and also with one of the "experts" in income tax matters upon whom he relied, he signed an agreement admitting that the deficiency was correct. We give no credence to his testimony to the effect that the revenue agent "forced" him to sign such agreement. It was signed in the presence of his nephew, who was also his legal adviser, and in the presence of Miss Lloyd, assistant to the "expert" who prepared his return.

While we hold that the document was the best evidence obtainable and was properly received for the purpose of showing the income reported by the petitioner, it was merely cumulative and our conclusion would probably be the same without it. The petitioner does

not deny that he paid a tax of only $63.44. He tacitly or expressly admits that he received a substantial portion of the income which the respondent, after a thorough investigation, determined that he did receive. The testimony of the disinterested witnesses, together with petitioner's failure to deny the correctness of the proffered copy—the evasiveness of petitioner under cross-examination—his frequent answer to questions in the language typical of witnesses reluctant to make a frank disclosure of all pertinent facts such as "I don't remember" or "I don't recollect"—all convince us that petitioner made an incorrect return of income with intent to evade tax. "Silence is often evidence of the most persuasive character. *Runkle* v. *Burnham*, 153 U. S. 216, 225; *Kirby* v. *Tallmadge*, 160 U. S. 279, 383." (*Bilokumsky* v. *Todd*, 263 U. S. 149, 154.)

Anent petitioner's contention that the rule enunciated in *Consolidated Coke Co.*, 25 B. T. A. 345 (affd., 70 Fed. (2d) 446), to the effect that a party to litigation who deliberately destroys evidence can not introduce a copy made by himself, we hold that the rule is not applicable here. The original return was destroyed by the Government as a matter of routine, for the purpose of minimizing its space requirements. Such destruction took place several years prior to the determination of the deficiency and at a time when litigation was neither pending nor contemplated. Under the circumstances, no reason for the application of the rule exists.

It would serve no useful purpose to extend this discussion. Suffice it to say that we are of the opinion, and hold, that the deficiency in tax determined by the respondent, is correct. We have found that the deficiency is due to fraud and the fraud penalty must be added.

Reviewed by the Board.

*Judgment will be entered for the respondent.*