H. M. McCoy v. Commissioner. Ike Vaughn v. Commissioner.
H. McCoy v. Commissioner
Docket Nos. 2018, 2025.
United States Tax Court
1946 Tax Ct. Memo LEXIS 261; 5 T.C.M. (CCH) 101; T.C.M. (RIA) 46048; February 18, 1946
*261 Held, that the respondent erred in making additions to each of petitioner's income as reported from a partnership. William Conway, Esq., for the petitioners. Frank M. Thompson, Jr., Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion These consolidated proceedings involve the following income tax deficiencies and fraud penalties determined by respondent for the calendar year 1939: 50%
Taxpayer
Deficiency
Penalty
Total
H. M. McCoy
$767.71
$383.85
$1,151.56
Ike Vaughn
788.21
394.10
1,182.31
The two issues presented are: (1) whether the respondent correctly determined in his deficiency notice to each taxpayer, respectively, that McCoy realized $9,275.54 and Vaughn realized $9,273.16 partnership income in addition to that reported on their respective returns for 1939, and, (2) whether, if such additional income was realized, each taxpayer filed a false and fraudulent return with intent to evade tax, by failing to report such additional income. Findings of Fact Each petitioner herein is a resident of Birmingham, Alabama, and filed his tax return for the calendar year 1939 with the collector for the *262 district of Alabama. During the latter half of 1939 H. M. McCoy and Ike Vaughn, petitioners, and Ben Fell formed a partnership to operate a race horse betting establishment known as the Bohemia Club located in Jefferson County, near the City of Birmingham, Alabama. McCoy furnished the original capital or "bank roll" of about $4,000, but he did not take an active part in the operation of the enterprise and drew no salary. Fell and Vaughn, with the latter in general charge, operated the enterprise and each received a salary of $10 in cash for each day of actual operations. McCoy had a 25 per cent interest and Vaughn and Fell each had a 37 1/2 per cent interest in any net profits derived from the enterprise. The partnership's race horse betting establishment was not operated at any race track and its operations consisted of accepting bets over the counter at the Bohemia Club, or by telephone, and of paying off winning bets at certain odds up to an established limit. The partnership did not operate on the pari-mutuel system and so did not make a percentage on all bets taken. The partnership rented a direct wire ticker service for receiving race track results, had two telephones on *263 the Birmingham Exchange, and employed a bookkeeper on a salary basis to figure the betting odds and keep a daily tally sheet on all money taken in and paid out. The partnership made "lay-off" bets with other bookmakers if it received too many bets on one horse and on such "lay-off" bets it received no commission, nor any gain or loss. Some customers maintained a deposit with the partnership to cover bets made by telephone. Each day that the business of taking bets was transacted, the net amount of money or the "bank roll", on hand from the preceding day's operation was taken from a safe deposit box at the Thomas Jefferson Hotel, Birmingham, Alabama, and placed in a cash drawer at the Bohemia Club. Vaughn handled the cash drawer, received and placed therein the money on bets made, paid therefrom the amounts due on the winning tickets and the expenses of operation, which included salaries, rent, telephone, wire and ticker service. Vaughn and Fell passed on all items of expense paid out and Vaughn made out a ticket showing the nature and amount thereof. Each day that business was transacted, Jack Lux, the salaried bookkeeper, maintained a daily tally sheet which was the only system *264 of accounting employed. The entries on the tally sheet showed: the amount of the net "bank roll" on hand at the beginning of each day; each item of money received on bets taken that day; each item of money paid out that day to winners and for lay-off bets and for expenses; the net gain or loss on that day's operations; and, the net "bank roll" on hand at the end of that day. At the close of each day Vaughn and Lux checked the daily tally sheet against the tickets on all bets taken and the tickets on all money paid out, checked the totals and also checked the daily balance as shown on the tally sheet against the cash on hand in the cash drawer. The tally sheet for each day was shown to McCoy for his information. The cash balance, or "bank roll", on hand at the end of the day, irrespective of whether the partnership had won or lost money during that day, was placed in the safe deposit box at night and became the "bank roll" for the next succeeding day's operations. The partnership sustained losses on quite a number of days. The partnership's "bank roll", as originally furnished by McCoy, and as the balances thereof varied from day to day, remained in the business until the end of the *265 year 1939, when the partnership was dissolved. At that time the three partners took the "bank roll" and the daily tally sheets to the office of Earl Montgomery, a lawyer, for an accounting between the partners. The profits of the partnership were divided there and the income tax returns for the partnership and for each of the three partners for the year 1939 were prepared by Montgomery on the basis of the record shown by the daily tally sheets, which had been accurately and correctly maintained. Each of the three partners there received his respective percentage of the partnership profits, which in the case of Fell and Vaughn was in addition to their respective salaries of $10 per day for each day of actual operations. Subsequent to the preparation of the tax returns by Montgomery, the partnership's sole records consisting of the daily tally sheets were placed in a drawer in the Bohemia Club and in 1940 they were confiscated by the sheriff of Jefferson County in a raid on that club. Since that time neither of the taxpayers has seen those records, and those records are not now available. The internal revenue agent who investigated each taxpayer's return for 1939 was unable to find *266 any records to verify the income as reported by each of them for that year. He talked with McCoy, Fell, Vaughn, and also Montgomery, and concluded that the returns were incorrect. The agent's method of redetermining the partnership's net income was to make his own mathematical computations, whereby he estimated amounts as representing the partnership's gross receipts and percentage of profit thereon. He allowed as deductions such items of reasonable expenses as the partners were able to relate to him. The agent was of the opinion that a race horse bookmaker's percentage of profit should be from 30 to 35 per cent of the bookmaker's gross receipts, which opinion was based on his own mathematical computations made in connection with one bookmaker's tax case, and accordingly he used such percentage of profit in his computations in the instant cases. The agent also made another computation, whereby (based on the odds offered or paid by the partnership on six races on one day's operations, as related to him by Fell) he estimated "how much money would have to be bet on each of the horses in the race to get back one dollar winnings". Based on his computation of the partnership's net income *267 and his conclusion that each partner had a one-third interest therein, the agent recommended the increases resulting in the deficiencies here in controversy. In the case of McCoy the statement attached to the deficiency notice discloses that McCoy reported $3,100 net income and the respondent increased the figure by $9,275.54, making a total of $12,375.54, as his adjusted net income from the partnership Bohemia Club for 1939. In the case of Vaughn, the statement attached to the deficiency notice discloses that Vaughn reported $4,902.38 net income and the respondent increased that figure by $9,273.16, making a total of $14,175.54 as his adjusted net income from the partnership Bohemia Club for 1939. The petitioners, H. M. McCoy and Ike Vaughn, did not receive additional income in 1939 from their partnership race horse bookmaking enterprise in the amounts determined by respondent and they did not file false and fraudulent income tax returns for that year. Opinion TYSON, Judge: These consolidated proceedings have been submitted upon the pleadings and oral testimony. In some respects the record is unsatisfactory. However, this Court must reach its conclusion solely on the facts *268 before it. The respondent contends as to the first issue that petitioners have failed to carry their burden of proof to overcome the prima facie correctness of his determination of the deficiencies in controversy. He further contends as to the second issue that each petitioner deliberately failed to report substantial amounts as income, thus evidencing the filing of false returns with intent to evade tax, and, sustaining respondent's burden of proof on the issue of fraud, citing Frank A. Weinstein, 33 B.T.A. 105; Harry Feldman, 34 B.T.A. 517; and Russell C. Mauch, 35 B.T.A. 617. The unequivocal testimony of petitioner's witnesses establishes that the returns as filed for 1939 were based upon the partnership's daily records which were accurately maintained as to every item of funds taken in and expended by the partnership during 1939. On the first issue, we are of the opinion, and so hold, that the respondent erred in his determination of the respective deficiencies involved. This conclusion eliminates the question of fraud presented by the second issue. Decision will be entered for the petitioners.