Edward M. Jackson v. Commissioner. Katherine A. Jackson v. Commissioner. Edward M. Jackson and Katherine A. Jackson v. Commissioner.
Jackson v. Commissioner
Docket Nos. 26588-26590.
United States Tax Court
1953 Tax Ct. Memo LEXIS 189; 12 T.C.M. (CCH) 778; T.C.M. (RIA) 53240; June 30, 1953
Preston D. Orem, Esq., for the petitioners. R. E. Maiden, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in the petitioners' income tax, and additions thereto, for the years and in the amounts as follows: 25% addition
50% addition
to tax under
to tax under
Year
Deficiency
sec. 291(a)
sec. 293(b)
Edward M. Jackson: Docket No. 26588
1944
$ 357.00
$ 89.25
$178.50
1946
886.22
221.56
443.11
Total
$1,243.22
$310.81
$621.61
Katherine A. Jackson: Docket No. 26589
1944
$ 457.00
$114.25
$228.50
1946
1,009.72
252.43
504.86
Total
$1,466.72
$366.68
$733.36
Edward M. Jackson and
Katherine A. Jackson: Docket No. 26590
1943
$ 66.83
$ 16.71
$ 33.42
1945
1,146.80
339.54
679.09
Total
$1,213.63
$356.25
$712.51
*190 The deficiencies for the years 1943, 1944, and 1946 result from the following determinations by the respondent: 1943
1944
1946
Adjusted gross income per return
$ 00
$ 00
$ 00
Additions to income: Wages
1,108.87
1,186.19
1,086.47
Net profit from business
737.65
4,315.23
10,627.81
Adjusted gross income determined
$1,846.52
$5,501.42
$11,714.28
One-half to each spouse
*
$2,750.71
$ 5,857.14
The deficiency for 1945, for which year a joint return was filed on January 27, 1947, results from the following determinations: The respondent determined that fees were understated and unreported in the amount of $623.30; and he disallowed, as unsubstantiated, alleged business expenses in the total amount of $3,790.50. Income was thereby increased by the total amount of $4,413.80. The issues, in general, are: (1) Whether the Commissioner determined the correct amount of the petitioners' gross income for the years 1944, 1945, and 1946. (2) Whether the Commissioner erred in disallowing, in whole or in part, certain business expenses claimed by the petitioners for the years 1943, 1944, 1945, and 1946. (3) Whether *191 the petitioners failed to file timely returns for the years 1943, 1944, 1945, and 1946, so as to be subject to the addition to tax provided by section 291 (a), I.R.C.
(4) Whether any part of the deficiency for the years 1943, 1944, 1945, and 1946, is due to fraud with intent to evade tax within the scope of section 293 (b), I.R.C.
The entire deficiency for each year is not in dispute. Some of the Commissioner's determinations resulting in the deficiencies are not contested by the petitioners. Findings of Fact The stipulated facts are found as facts and are incorporated herein by this reference. The petitioners are, and during the taxable years were, husband and wife, and reside in Los Angeles, California. The petitioners, on January 27, 1947, filed a delinquent, joint income tax return for the year 1945 with the collector for the sixth district of California. The petitioners failed to file either a joint or separate income tax return for the years 1943, 1944, and 1946. All of the petitioners' gross income during the taxable years was community income under the laws of California. The Commissioner determined the deficiency for *192 the years 1943 and 1945, on the basis of a joint return, which method was not disadvantageous to the petitioners, and the deficiency for the years 1944 and 1946, on the basis of separate returns for each of the petitioners since such determination resulted in a smaller total tax deficiency. During the taxable years, petitioner, Edward M. Jackson, hereinafter referred to as the petitioner, was engaged in the business of preparing Federal and State of California income tax returns for individuals. He did not keep any books or records, or receipts or other memoranda, in the regular course of his business, reflecting either business receipts or expenditures; and he did not maintain a bank or checking account. Petitioner did retain a copy of each income tax return prepared by him for others. In the absence of adequate records reflecting the petitioner's gross business receipts and expenditures, the respondent reconstructed the petitioner's gross business receipts, and made estimates of petitioner's business expenses from available information. The respondent, in determining the deficiencies in question, allowed the standard deduction to cover nonbusiness deductions. The petitioner's *193 wife was employed as a waitress during the taxable years, and her earnings in that employment were subject to income tax withholding by her employer. The petitioner's wife received the following amounts as wages during each of the taxable years: Year
Amount
1943
$ 864.22
1944
1,186.19
1945
1,187.25
1946
1,086.47
Petitioner was born in 1887. He is a high school graduate. He also studied bookkeeping for a period of six or eight months in about 1910. Prior to 1933, the petitioner's principal occupation was as an insurance salesman. He was also employed for a short period as a station agent for the Chicago & Northwestern Railroad. In 1929 the petitioner was convicted of grand theft in the Superior Court, for Imperial County, State of California, and received a penitentiary sentence. He was subsequently granted probation. From 1933 until about 1940, the petitioner was employed in an accounting or bookkeeping capacity by E. F. Hutton & Co., stockbrokers, in Los Angeles. During 1941 and 1942, the petitioner was employed by G. A. Lindberg, an accountant, in Los Angeles. Lindberg, in addition to accounting work and the preparation of income tax returns, also, engaged *194 in "naturalization" and "derivative citizenship" work. Petitioner worked in Lindberg's office as an accountant and assisted in the preparation of income tax returns. Petitioner's chief duty while employed by Lindberg was to contact clients, and have the clients fill out a questionnaire from which their income tax returns would be prepared in Lindberg's office. Petitioner would then deliver the completed tax returns to the clients. Early in 1943, the first taxable year, the petitioner secured about 150 income tax clients for himself, principally wage earners, and commenced the business of preparing Federal and State of California income tax returns for individuals for a fee. The petitioner's business cards and letterheads contained the following: "Edw. M. Jackson and Associates Derivative Citizenship: Naturalization Income Tax Service" The extent of the petitioner's activities, if any, during the taxable years in the field of "Derivative Citizenship" and "Naturalization" work is not disclosed by the record, and no income from those activities has been included by the respondent in reconstructing the petitioner's gross income from business for the taxable years. The petitioner *195 conducted his business in his residence. With the exception of the year 1943, the petitioner operated his business in the following manner: His usual procedure was to visit a client's home and have the client fill out a questionnaire which, purportedly, contained the necessary information for preparing the client's tax return. The petitioner would take the questionnaire to his home where the tax return would be prepared and typed. The petitioner would then deliver the completed return to the client, together with a bill for his services. In some instances, the petitioner would have a client sign a blank return which petitioner would fill in from the information contained in the client's questionnaire. The petitioner would then file the client's return with the collector. In some instances, the petitioner conducted his business by correspondence. During the period from January 1 to April 15 when the Federal and State tax returns were being prepared, the petitioner employed typists and clerical help on a contract work basis, i.e., a flat rate per return. During one or more of the taxable years, the petitioner's two daughters, Naomi and Aubrey, and his son-in-law, Robert Kuebler, assisted *196 petitioner in the business, either by doing typing or clerical work, or by picking up questionnaires from clients, or delivering completed returns. The petitioner paid for the work performed in cash. In the year 1946, the petitioner's daughter Aubrey, and her husband, were paid a total of $1,765.92 by petitioner for assisting him in his business. In the year 1943, petitioner did not prepare the returns himself. In that year he took the questionnaires to Lindberg's office where the returns were prepared and typed. Petitioner compensated Lindberg for his work on an unexplained fee basis. Lindberg went out of business in 1944. The number of petitioner's clients increased in each of the taxable years. The petitioner would prepare all the returns in a family group for one fee. For example, if it was more advantageous taxwise for a husband and wife to file separate returns, the petitioner would prepare the two returns for one fee. Or, if a minor child had earned income of less than the exemption allowed by law, on which tax had been withheld by the employer, petitioner would prepare a return for the minor without an additional charge to the parents. The petitioner would, also, prepare *197 a declaration of estimated tax for the client, if necessary, and the California State income tax return. Petitioner was never admitted to practice before The Tax Court of the United States, or the Treasury Department. The approximate number of Federal income tax returns prepared by the petitioner, and the approximate number of family groups represented by the returns, for each of the years 1943 to 1946, inclusive, were as follows: 1943
1944
1945
1946
Returns filed
150
260
440
559
Family groups
141
249
351
498
The only record of his business activities kept by the petitioner in the regular course of business consisted of a "file" for each client in which petitioner kept a copy of all the returns prepared by him for that client. Some of the carbon copies of the returns in the petitioner's files contained a notation of the amount charged by the petitioner for preparing the returns for each year. The number of retained copies of tax returns on which the amount charged the client by the petitioner was noted, and the aggregate amount of gross receipts from clients thereby indicated, for the years 1944 to 1946 were as follows: 1944
1945
1946
Retained copies of returns on which charge was noted
22
108
387
Gross receipts from clients thereby indicated $478
$2,358
$10,234
*198 The fees which petitioner charged each family group for his income tax service during the taxable years varied. In most instances the amount of the fee charged ranged from $12.50 to $50. The petitioner prepared only an original copy of the bill for his services. When the bill was paid, usually when the completed return was delivered to the client, the original copy was receipted and given to the client. The gross receipts from the petitioner's business, i.e., the amount of fees received by the petitioner for preparing income tax returns for clients, in each of the years 1943 to 1946, inclusive, was not less than the following amounts: Gross receipts
Year
from business
1943
$ 937.65
1944
5,140.23
1945
7,282.55
1946
12,660.86
During the taxable years, petitioner owned and used two automobiles in his business. Petitioner's son-in-law, also, used his car in 1946 when working for the petitioner. Approximately 75 per cent of the petitioner's clients lived within a radius of 12 miles of the petitioner's home. Usually the clients were contacted, questionnaires picked up, and the completed returns delivered by automobile. The approximate number of miles traveled *199 by car by the petitioner or his employees in each of the taxable years was as follows: Approximate
Year
number of miles
1943
2,000
1944
4,000
1945
6,000
1946
10,000
From January 1, 1943 to September 1946, the petitioner rented the house in which he lived for $40 a month. In September 1946 petitioner purchased a house at 2115 West 84th Place, Los Angeles, and immediately moved to that residence. There was one telephone in the house rented by the petitioner, which phone the petitioner used in his business. During the taxable years, the petitioner did not keep any books or records in the regular course of business, or otherwise. He did not maintain a checking account. With the exception of several receipts for amounts paid to employees in the year 1946, the petitioner had no invoices or receipted bills for any business expenditures. The petitioner expended for ordinary and necessary business expenses in each of the taxable years the amounts set forth below: Item
Amount
1943
1944
1945
1946
Automobile expense
$100.00
$200.00
$ 400.00
$ 500.00
Typing and contract work
500.00
1,140.25
2,080.92
Telephone
112.90
180.00
180.00
Postage
25.00
84.28
126.42
Typewriter rental
15.00
25.00
37.50
Depreciation
60.00
60.00
Tax publications
8.00
8.00
Stationery
54.50
81.75
Maintenance - office machines
38.25
57.38
Miscellaneous
100.00
40.00
50.00
50.00
$200.00
$892.90
$2,040.28
$3,181.97
*200 The petitioner has failed to prove that he is entitled to any deduction, as an ordinary and necessary business expense in the taxable years 1944, 1945, and 1946, for entertainment, and for travel expense, i.e., hotel and meals, in connection with the operation of his business. The petitioner has failed to prove that he is entitled to any deduction, as an ordinary and necessary business expense in the taxable years 1944, 1945, and 1946, for rent, gas, light, water and insurance in connection with the use of his residence for business purposes. There is no basis in the record for making a reasonable apportionment of the aforementioned expenses as between personal living expenses and business expenses. On April 1, 1946, the Bureau of Internal Revenue commenced an investigation of the income tax liability of the petitioner and his wife, for the years 1943 to 1946, inclusive. The petitioner, during the course of the investigation, advised the investigating agents that he did not have retained copies of any income tax returns filed by him for the years 1943 to 1946, inclusive, and that he did not maintain any books or records, in the course of business or otherwise. Also, during the *201 investigation, the petitioner did not produce for the examining agents all of his files on clients until he was confronted with income tax returns he prepared for clients, the copies of which were not in the files produced by petitioner initially. The records of the office of the Collector of Internal Revenue for the sixth district of California disclosed that petitioner filed an income tax return for the year 1942; that petitioner had requested an extension of time within which to file his return for the year 1946; and that petitioner and his wife filed a joint return for the year 1945 on January 17, 1947 which was 10 months after the investigation of the tax liability of the petitioner and his wife had been commenced. An exhaustive search of the records of the same collector's office, by the examining agents and employees of the collector's office, failed to disclose that either the petitioner or his wife filed separate or joint returns for the years 1943, 1944, and 1946. On April 1, 1946, the Bureau of Internal Revenue also commenced a collateral investigation of the petitioner's practices in preparing Federal income tax returns for others. As a result of this collateral investigation *202 into the petitioner's business practices, the petitioner, in May 1949, was indicted in the United States District Court for the Southern District of California, for wilfully, knowingly, unlawfully and feloniously aiding in and assisting in, and counseling, prescribing and in advising the preparation and presentment to the collector of Internal Revenue for the sixth internal revenue collection district of California, at Los Angeles, California, of false and fraudulent income tax returns. The indictment contained 25 counts. On May 20, 1949, the petitioner entered a plea of guilty to two counts of the indictment relating to income tax returns of two of the petitioner's clients for the year 1945. The petitioner received a sentence of one year in the penitentiary on his plea of guilty to the two counts. The petitioners, jointly and individually, without reasonable cause, failed to make and file returns within the time prescribed by law for each of the years 1943, 1944, 1945, and 1946. Part of the deficiency for each of the years 1943, 1944, 1945, and 1946 is due to fraud with intent to evade tax. Opinion The issues in general are whether the petitioner's gross income from business *203 for the years 1944, 1945, and 1946 is less than the amount determined by the respondent; whether the petitioner is entitled to certain deductions, as ordinary and necessary business expenses, in the years 1943, 1944, 1945, and 1946; whether the petitioners failed to file timely returns for the years 1943, 1944, 1945, and 1946 so as to be liable for the addition to tax provided by section 291 (a) of the Code; and whether any part of each deficiency for each of the years 1943, 1944, 1945, and 1946 is due to fraud with intent to evade tax. Petitioner had abandoned other issues raised by the pleadings. The petitioners contend, in the first instance, that they filed a joint income tax return for each of the taxable years 1943 to 1946, inclusive. There is no question that the petitioners filed a delinquent, joint income tax return for the year 1945. But the evidence establishes, and we have found as a fact, that the petitioners failed to file either joint or separate income tax returns for the years 1943, 1944, and 1946. The petitioners' contention that returns were filed for the years 1943, 1944, and 1946 is based on the testimony of the petitioner, Edward M. Jackson, and alleged *204 copies of joint income tax returns for the years 1944 and 1946 which were presented by the petitioner at the trial. Petitioner's wife, Katherine A. Jackson, did not appear at the trial, or offer any testimony or evidence. The testimony of petitioner that he filed returns in 1943, 1944, and 1946 is not convincing, and his contention that the alleged copies are proof that he or his wife filed returns for 1943, 1944, and 1946 must be rejected. Furthermore, the petitioner told the examining agents that he did not have any retained copies of his income tax returns for the taxable years. No evidence of payment of any tax by the petitioner for the years 1943, 1944, and 1946 was presented. The alleged copy of a joint return for 1944 discloses an overpayment of tax by withholding from wages of $35.55. The alleged copy of a joint return for 1946 discloses a tax due of $324.12. An unsigned sheet of paper attached to the alleged copy contains the notation "We are unable at this time to meet this tax obligation." The testimony of the examining agents, and of employees of the office of the Collector of Internal Revenue for the sixth district of California, disclosed that an exhaustive search of *205 the records of the collector's office had been made. The search disclosed no record of the filing of any return, either joint or separate, for the petitioner or his wife for the years 1943, 1944, and 1946, and no record of any payments of income taxes for those years by the petitioner. The records of the collector's office did disclose that the petitioner filed a return for the year 1942; that petitioner and his wife filed a joint return for the year 1945; and that petitioner requested an extension of time within which to file his return for 1946. We have considered the possibility that a taxpayer's return may be lost or misplaced in a collector's office, and that there may have been an error in the indexing and recording of the return in the collector's office, but the occurrence of such an error in three out of four consecutive years strains our credulity, particularly in view of all of the evidence and record before us. Gross Receipts from Business. The respondent determined that the gross receipts of Edward M. Jackson from his business for each of the taxable years 1943 to 1946, inclusive, was not less than the following amounts: 1943
1944
1945
1946
Gross receipts from business
$937.65
$5,140.23
$7,282.55
$12,660.86
*206 The petitioner, Edward M. Jackson, does not contest the correctness of the respondent's determination of gross receipts from business for the year 1943, he contends however that his gross receipts from business for the years 1944 to 1946, inclusive, were less than the amount determined by the respondent. The burden of proof is on the petitioner to establish by credible evidence that the amount of his gross receipts from business was in fact less than that deetrmined by the respondent. The petitioner has failed to meet that burden. The petitioner did not maintain any books or records in the regular course of business or otherwise. The only record kept by petitioner of fees received from clients consisted of notations on his retained copies of returns prepared by him. As disclosed by our findings of fact, for the years 1944 and 1945, the number of retained copies of returns on which the petitioner noted the amounts of his fees for preparing the return was less than 10 and 25 per cent, respectively, of the total number of returns prepared. The petitioner's contention that his gross business receipts in 1944, 1945, and 1946 were less than the amounts determined by the respondent is *207 based upon the petitioner's uncorroborated and self-serving testimony, and on the figures contained in the alleged copies of returns allegedly filed by the petitioner for the years 1944 and 1946, and the joint return filed by petitioner and his wife for the year 1945. No other evidence from which the petitioner's gross business receipts could be reconstructed with reasonable accuracy was presented by the petitioner. We have already determined that the alleged copies of returns allegedly filed by the petitioner are without evidentiary value. And the rule is well established that bare assertions by a taxpayer as to the amount of his income, or that his return is correct as filed, are not sufficient to overcome the presumption of correctness which attaches to the Commissioner's determinations. Louis Halle, 7 T.C. 245, affd. 175 Fed. (2d) 500, certiorari denied 338 U.S. 949. Furthermore, we are satisfied that the respondent's reconstruction of petitioner's gross business receipts is fair and reasonable. The respondent first determined the average fee per return charged by the petitioner. The average fee was determined from the notations on the *208 retained copies in the petitioner's files of the returns prepared by him for others. Respondent then reduced the number of returns prepared to the approximate number of family groups covered by the returns, since petitioner usually made only one charge to a family group, although more than one return may have been prepared in each taxable year. The number of family groups served was then multiplied by the average fee charged. The respondent then reduced the amount of gross receipts from clients thus obtained by 5 per cent to allow for uncollectible fees. We conclude, from the evidence and record before us, that the respondent's method of reconstructing petitioner's gross income was fair and reasonable, and that the petitioner has failed to establish any error on the part of the respondent. It is held that the petitioner's gross business receipts in each of the taxable years was not less than the amount determined by the respondent. Ordinary and Necessary Business Expenses. The petitioner contends that he is entitled to certain deductions as ordinary and necessary business expenses, in each of the taxable years, in amounts which are in addition to and in excess of the amounts *209 allowed by the respondent. The respondent, in determining the deficiencies in issue, allowed the following items of deduction, without proof, as ordinary and necessary business expenses: Item
Amount
1943
1944
1945
1946
Automobile expense
$100.00
$200.00
$ 400.00
$ 500.00
Typing and contract work
500.00
1,140.25
1,120.45
Office supplies and miscellaneous
100.00
40.00
50.00
Telephone
60.00
180.00
Postage
25.00
84.28
126.42
Typewriter rental
25.00
37.50
Depreciation
60.00
60.00
Tax publications
8.00
Stationery
54.50
81.75
Maintenance of office machines
38.25
57.38
Totals
$200.00
$825.00
$1,990.28
$2,033.50 The following schedule is a summary of the total amount of business expenses claimed by the petitioner on brief, the total amount of business expenses allowed by the respondent, and the items and amounts of business expense deductions in issue for each of the taxable years: 1943
1944
1945
1946
Total amount of business expenses
claimed by petitioner on brief
$550.00
$3,610.10
$5,608.28
$6,669.97
Total amount of business expenses
allowed by the respondent
200.00
825.00
1,990.28
2,033.50
In issue
$350.00
$2,785.10
$3,618.00
$4,636.47
Items of deductions in issue
Auto expense
$350.00
$2,050.00
$2,900.00
$2,650.00
Typing-salaries
96.00
1,200.47
Rent
240.00
240.00
170.00
Gas
24.00
24.00
24.00
Light and water
24.00
24.00
24.00
Telephone
52.90
130.00
Postage
11.20
Typewriter rental
15.00
Entertainment
212.00
300.00
300.00
Travel (hotel & meals)
60.00
120.00
120.00
Insurance
10.00
Tax publications
8.00
Totals of items in issue
$350.00
$2,785.15
$3,618.00
$4,626.47
*210 The petitioner has the burden of proving by competent evidence that he incurred and paid ordinary and necessary business expenses for the items and in the amounts claimed. The petitioner, as previously noted, kept no books or records in the ordinary course of business or otherwise. With the exception of several receipts evidencing the payment in 1946 of a total of $2,080.92 for typing and other services performed by employees in connection with the petitioner's business, the petitioner has offered no documentary evidence whatever in support of the claimed deductions. No invoices or receipted bills evidencing the payment in the taxable years of the amounts claimed as ordinary and necessary business expenses have been produced by the petitioner. The petitioner's claim to the deductions in issue rests solely on his own uncorroborated and self-serving testimony. The petitioner's testimony consisted solely of estimates of the amounts expended by him in each taxable year for items of business expense. Again we point to the well established rule that mere assertions of a taxpayer that expenditures claimed as deductions were actually made, and were ordinary and necessary business expenses, *211 are not sufficient to discharge his burden of proof and overcome the presumption of correctness which attaches to the Commissioner's determinations. Cf. Louis Halle, supra; Birnbaum v. Commissioner, 117 Fed. (2d) 395; Carmack, et al., v. Commissioner, 183 Fed. (2d) 1, certiorari denied 340 U.S. 875. The petitioner has established that he is entitled to deductions for business expenses in 1944, 1945, and 1946 which are in excess of the total amounts which the respondent allowed, and we have, in our findings of fact, made findings with respect to the amounts of expenditures which constitute ordinary and necessary business expense. For convenience, the following schedule shows the totals which the respondent has allowed and the totals of deductions which we find are allowable: Allowed by
Allowed Upon
Respondent
Trial
1943
$ 200.00
$ 200.00
1944
825.00
892.90
1945
1,990.28
2,040.28
1946
2,033.50
3,191.97
Additions to the Tax under Section 291(a): The petitioners have failed to establish that failure to file returns within the time prescribed by law for the years 1943, 1944, 1945, and 1946 *212 was due to reasonable cause and was not due to wilful neglect. Therefore, the additions to the tax in each year under the provisions of section 291(a) of the Code are sustained. Additions to the Deficiencies under Section 293(b). Upon the entire record it is held that part of each deficiency involved in these proceedings for the years 1943, 1944, 1945, and 1946 is due to fraud with intent to evade tax. The provisions of section 293 (b) refer to "any part of any deficiency." Mauch v. Commissioner, 113 Fed. (2d) 555. Part of the deficiency in each taxable year is due to the intent of the petitioner, Edward M. Jackson. He either failed to report income, or he claimed deductions in excessive and unsubstantiated amounts, so that his taxable net income per each year - 1943-1946, inclusive, has been understated. He engaged in a business of preparing income tax returns for others and he was able readily to understand the requirements of the Internal Revenue Code in the matter of reporting all of his gross income and computing his actual expenditures for ordinary and necessary business expenses in his own returns. He has presented no credible explanation for his failure *213 to file returns for 1943, 1944, and 1946, or for the errors in the return for 1945, or for his failure to keep adequate books and records in the course of his business as is required by the Code. See: Section 54 (a), I.R.C.; and Regulations 111, sec. 29.54-1; In Re Weisberger, 41 Fed. (2d) 275; and Harry Feldman, 34 B.T.A. 517, 520. Under this issue, the respondent has discharged his burden of proof with respect to Edward M. Jackson. The wife of Edward M. Jackson is a petitioner in these proceedings for two reasons: She earned income and she must report community income. We do not find that the petitioner, Katherine A. Jackson, failed to report her taxable income with a fraudulent intent and with the purpose of evading tax. With respect to her, it is held that the respondent has failed to meet the required burden of proof. For the year 1943, decision is for the respondent. For the years 1944, 1945, and 1946 recomputations of the deficiencies under Rule 50 are necessary because of our findings that petitioner's business expenses were comewhat larger than respondent has allowed. Docket No. 26590 relates to both 1943 and 1945. Decision *214 with respect to 1943 necessarily will be entered after the recomputation for 1945 is filed. It has been stipulated that a dependency deduction in 1946 is allowable for a daughter of petitioners, Naomi. No issues have been presented relating to nonbusiness deductions. Respondent has allowed the standard percentage as deduction. Decision will be entered under Rule 50. Footnotes
*. Joint return filed.↩