Henry Warten v. Commissioner. Emerson Foulke and Margaret Foulke v. Commissioner. Kelsey Norman and Ruth N. Norman v. Commissioner. Kelsey Norman v. Commissioner.
Warten v. Commissioner
Docket Nos. 24248 - 24251.
United States Tax Court
1954 Tax Ct. Memo LEXIS 258; 13 T.C.M. (CCH) 329; T.C.M. (RIA) 54095; March 31, 1954
*258 James J. Waters, Esq., for the petitioners. Frank M. Cavanaugh, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in the petitioners' income tax, and additions thereto for fraud under section 293(b), I.R.C., for the years, and in the amounts, as follows: Addition
Docket Numbers
Year
Deficiency
293(b)
24251 - Kelsey Nor-
man
1941
$4,073.39
$2,161.72
1942
5,023.40
2,511.70
1943
2,527.71
1,263.86
24250 - K. & R. Nor-
man
1944
9,556.22
4,778.11
1945
6,718.91
3,359.46
1946
4,220.38
2,110.19
24249 - E. & M. Foulke
1944
685.50
342.75
1945
1,072.21
536.11
1946
1,231.43
615.72
24248 - H. Warten
1946
168.47
84.24
The only issue in each case is whether a part of the deficiency for each year is due to fraud with intent to evade tax. In Docket No. 24251, the assessment of a deficiency for 1941 is barred unless a false or fraudulent return was filed. The issue relates to admitted understatements of income from the professional business of each petitioner. In Docket No. 24248, Henry Warten, the *259 petitioner, concedes that the determination of a deficiency for 1946 is correct; he contests only the 50 per cent addition to the deficiency under section 293(b). In Docket Nos. 24249, 24250, and 24251, the parties have entered into a stipulation by which they agree upon the amounts of taxable net income for each year. By the stipulation, the respondent has agreed that the taxable net income of Kelsey Norman for each year, 1941-1946, inclusive, was less than was determined in the deficiency notices; and that the taxable net income of E. Foulke for the year 1944 was less than was determined in the deficiency notice. It follows that the deficiencies for the years and for the petitioners to which the stipulation relates will be less upon recomputation under Rule 50. The returns of all of the petitioners were filed with the collector for the sixth district of Missouri. Findings of Fact All of the petitioners are residents of Joplin, Missouri. In Docket Nos. 24249 and 24250, the issue relates only to the income and business transactions of Emerson Foulke and Kelsey Norman, and, therefore, for convenience, they are referred to hereinafter as the petitioners, or as Foulke and as Norman. *260 Norman and his wife, Ruth, filed joint returns for the years 1944-1946; and Foulke and his wife, Margaret, filed joint returns for the years 1944-1946. Norman, Foulke, and Warten are lawyers who have engaged in, and are still engaged in, the practice of law in Joplin, Missouri. Prior to May 1, 1944, Norman carried on a law practice as an individual, as did Foulke. On May 1, 1944, Norman and Foulke formed a law partnership, as equal partners, which is referred to hereinafter as the N.F. partnership. On January 1, 1946, another partnership was formed consisting of Norman, Foulke, and Warten, which is referred to hereinafter as the N.F.W. partnership, in which Norman and Foulke had a 40 per cent interest, each, and Warten had a 20 per cent interest. Warten had been in the military service, in the United States Marine Corps, from October 28, 1942, until December 14, 1945. He is a nephew of Norman. Issue 1. Facts Relating to Individual Income of Kelsey Norman The law practice of Norman, as an individual, consisted largely of personal injury and compensation claims cases. Norman's clients made payments to him both by check and in cash. Norman maintained one commercial bank account. *261 He deposited some of the receipts from his professional business in his bank account; other business receipts were not deposited in any bank account but were handled and used by Norman as cash in pocket. He used such undeposited cash receipts to pay some of his business and personal expenses. Informal accounting records of Norman's business receipts and expenditures were maintained in his office by his secretary. Norman did not make entries in these accounting records. The accounting records consisted of loose leaf books. The names of clients were entered upon loose leaf sheets of paper, as were office and other expenditures, also. Receipts from clients, clients' costs, and the expenses of the clients' business were entered on the pages under their names - some duplicate bank deposit slips were filed in the office upon which notations were made of the amounts received from clients. Some bank statements and cancelled checks were retained in the office. The accounting records and other records, described above, were incomplete for each of the taxable years 1941-1945, inclusive, and were inadequate for the purpose of making accurate computations of Norman's gross and net income for *262 each of the taxable years 1941-1945. Substantial amounts of cash receipts, which included fees for professional services, were received by Norman in each of the taxable years 1941-1945 which were not recorded in any of Norman's accounting records, and which were not included in income in his income tax returns for the years 1941-1945. Norman did not have any income from his individual law practice in 1946. Norman's fees for his legal services were known to him. He either fixed his fees himself, or they were fixed by court orders. During the years 1941 through 1946, Norman received a small amount of income in each year from dividends. Also, he owned several pieces of improved real estate which he rented, and he occasionally sold a piece of real estate, or bought a piece of property. He received rents in each year from the rental properties, and expenses of maintaining the properties were incurred and paid. In some of the years, 1941-1946, Norman's properties were operated at a profit, and in other years, at a loss. Also, in some instances a sale of a piece of property resulted in a loss, and in other instances, in a profit. At the time when Norman's income tax returns for the *263 year 1941 through 1945 were being prepared, Norman dictated to his secretary the amounts of the losses or gains from sales of property. There were no records about what was realized upon sales of property, gain or loss, except such memoranda and information as Norman had in his possession, from which he gave his secretary the information to be written in his income tax returns. Norman knew and advised his secretary of the amount he paid for a piece of property and the amount for which it was sold. He knew the street number and the lot number. A rent receipts book was maintained in Norman's office. Norman knew what the monthly rentals were and notations were made in the rent receipts book of rent payments received. Sometimes tenants paid Norman their rent, by cash or by check, at his home. In Norman's income tax returns for 1941-1945, the net profit from his professional business for each year was understated; it was stated to be in the amounts set forth below. The correct amount of his net professional income for each year was not less than is shown below. The following schedule also shows the amounts of the understatements of net professional income: Correct
Amount of
Net Prof. Inc.
Net Prof.
Net Prof. Inc.
Year
Per Returns
Income
Understated
1941
$10,409.78
$17,436.53
$ 7,026.75
1942
5,305.71
16,017.39
10,711.68
1943
7,014.01
14,048.17
7,034.16
1944
2,410.39
16,036.87
13,626.48
1945
(5,844.02)
4,096.28
9,940.30
*264 Also, in his returns for the years 1944, 1945, and 1946, Norman understated his net income from the N.F. partnership, and for the year 1946, his net income from the N.F.W. partnership. The facts relating to the two partnerships will be discussed hereinafter. Norman's reported, and his correct distributive share of net income from the N.F. and N.F.W. partnerships, and the amount of the understatement of income from the partnerships, were as follows: Amount of
Understate-
Net
Net
ment of
Partner-
Income
Income
Net Income
ship
Year
Reported
Received
in Return
N.F.
1944
$3,178.50
$ 4,394.04
$1,215.54
1945
7,868.30
11,406.15
3,537.85
1946
7,743.81
8,766.63
1,032.82
N.F.W.
1946
5,500.53
6,903.22
1,402.69
In his return for 1946, Norman reported the following items of income and took the following deductions with the result of reporting net income in the amount of $9,291.38: Receipts Reported in Return
Net income, rents
$6,437.40
Interest and dividends
153.00
Net capital gains
475.00
Net income from partner-
ship
7,743.81
Net income from partner-
ship
5,500.53
Total
$20,309.74
Deductions Taken in Return
Depreciation - office equip-
ment
$ 775.00
Insurance
1,961.18
Losses - clients
535.99
Donations
96.00
Interest
1,753.26
Taxes
1,560.37
Medical expense
948.83
Office expenses
376.00 *
Bar dues
15.50 *
Expenses of Hebbard case
and other fees and costs
1,496.23 *
Loss on note of Folds
1,500.00 *
Total
$11,018.36
Net income reported
$ 9,291.38
*265 The petitioner, Norman, has stipulated with the respondent that net income for 1946 amounted to $18,748.97. That amount of net income results from the following adjustments of items in the return; decrease of net rents received to the extent of $2,394.29 and total increase of net receipts from the two partnerships in the total amount of $2,425.51, or a net increase of income of $31.22; and increase of income by disallowance of deductions in the total amount of $9,426.37, or a total increase of net income of $9,457.59. The following shows the deductions allowed, the deductions taken in the return, and the net adjustment under the stipulation of the parties: Deducted
Deductions
Deductions
Items
in Return
Allowed
Disallowed
Depreciation, office
$ 775.00
$ 775.00
Insurance
1,961.18
1,961.18
Losses, clients
535.99
535.99
Donations
96.00
$ 52.00
44.00
Interest
1,753.26
1,753.26
Taxes
1,560.37
113.19
1,447.18
Medical expenses
948.83
957.80
8.97 **
Office expenses
376.00 *
376.00 *
Bar dues
15.50 *
15.50 *
Hebbard expense
1,496.23 *
77.50 *
1,418.73
Loss, note
1,500.00 *
1,500.00
$11,018.36
$1,591.99
$9,426.37
*266 The following schedule sets forth petitioner's net income from all sources as reported in his returns for 1941-1946; the correct amounts of his net income from all sources as stipulated by the parties; and the amounts of the understatements in the returns of net income from all sources: Understate-
ment of
Net Income
Correct Net
Net Income
Year
Per Return
Income
in Return
1941
$5,842.71
$15,346.61
$ 9,503.90
1942
4,626.46
15,543.15
10,916.69
1943
7,600.79
11,878.86
4,278.07
1944
6,260.51
22,224.63
15,964.12
1945
4,664.25
18,133.23
13,468.98
1946
9,291.38
18,748.97
9,457.59
After the investigation of Norman's tax liability was commenced by respondent's agents in March 1946, Norman employed two certified public accountants to audit his records and to reconstruct his net income for the years in question. The accountants could not determine Norman's income from the accounting records which were kept. *267 One of the accountants, George Sinderson, reconstructed Norman's income for each of the years 1941 through 1946, by use of the net worth method. The net worth statement prepared by Sinderson disclosed an increase in Norman's net worth, during the period 1941 through 1946, of $48,131, with the yearly increases in net worth ranging from a low of $4,522, to a high of $11,882. Issue 2. The partnerships of Norman and Foulke, 1944 to 1946, inclusive, and Norman, Foulke and Warten, 1946 Norman and Foulke formed a law partnership, as equal partners, on May 1, 1944, which is referred to herein as the N.F. partnership. Prior thereto each practiced law individually. The partnership agreement applied only to new business. Any fees received by either from cases which were on hand when the partnership was formed were to remain the separate income of each of the partners. A new law partnership, consisting of Norman, Foulke and Warten, which is referred to herein as the N.F.W. partnership, was formed on January 1, 1946. The new partnership was formed in order to bring Warten into the firm. The partnership agreement, also, applied only to new business, that is, the fees from cases which the *268 N.F. partnership had on hand as of January 1, 1946, were to remain the income of the N.F. partnership. Norman and Foulke, each, have a 40 per cent interest, and Warten a 20 per cent interest in the income of the N.F.W. partnership. The N.F. partnership was not dissolved when the N.F.W. partnership was formed on January 1, 1946. It continued in existence during 1946, and thereafter, for the purpose of completing the cases on hand, and for the further purpose of carrying on the joint real estate transactions of Norman and Foulke. A. Facts Relating to the N.F. Partnership Norman and Foulke engaged in the general practice of law. A substantial part of their law business consisted of representing plaintiffs in personal injury cases. Regular books of account, reflecting all receipts and disbursements, were not kept for the partnership. A general ledger and a cash journal were not maintained. The informal accounting records which were kept consisted of a loose leaf ledger book, some fee sheets, some duplicate bank deposit slips, bank statements, check book stubs, and cancelled checks. The loose leaf book contained individual ledger accounts or "case sheets" for some of the firm's *269 clients. Where a ledger account was kept for a client, the amount received from the client or from others in settlement of the client's case, and the amounts disbursed on behalf of the client were entered in the account. Fee sheets were kept in the loose leaf book for listing fees as they were received from clients. Some duplicate bank deposit slips were filed in the office which contained notations as to the source of the deposit. Sheets of paper on which were entered items of office and general expense were kept in the back of the loose leaf book. The entries in the accounting records were made by the partners' secretary. A commercial bank account was maintained for the partnership at the Joplin National Bank and Trust Co.
All partnership receipts were not entered in the accounting records, and all receipts were not deposited in the partnership bank account. Cash fees were received by the partners in each of the years 1944, 1945, and 1946, which were not included in bank deposits, and which were not recorded in any of the accounting records. The informal accounting records which were kept were not complete for any of the years 1944 to 1946, inclusive, and they did not reflect *270 the true gross receipts and net income of the partnership in any of the years in question. The returns for the N.F. partnership were prepared by Foulke, on a cash basis. Net income was understated in each of the taxable years as follows: Understate-
Net Income
Stipulated
ment of
Years
Per Return
Net Income
Net Income
1944
$ 6,357.00
$ 8,788.08
$2,431.08
1945
15,736.61
22,812.27
7,075.66
1946
15,487.61
17,533.25
2,045.64
The understatement of net income in the returns resulted chiefly from the taking of deductions for expenses in excess of what could be substantiated upon audit of the returns, as the following schedule shows: Expenses
Deducted
Stipulated
Excessive
Year
in Returns
Expenses
Deductions
1944
$ 4,866.66
$3,446.49
$1,420.37
1945
12,711.02
5,398.18
7,312.84
1946
7,561.58
3,938.05
3,623.53
Gross receipts for each year were not reported accurately. In the return for 1944, there was a small understatement of gross receipts, and in the return for 1945 and 1946 there were overstatements of gross receipts. One reason for the inaccurate statement of gross income in the returns was *271 that an accurate record of cash fees was not kept in the accounting records, or some of the cash fees were not entered in the accounting records at all, and Foulke made an estimate of cash fees, all or part of them, when he made up the returns. In 1945, the partnership purchased real estate which it rented during the year 1946. The partnership return for 1946 shows gross rental income of $3,785. When the investigation of the partners' tax liability was started by the respondent's agents, Norman and Foulke employed Sinderson, a certified public accountant, and Jean Kupchin, a bookkeeper who worked under Sinderson's direction, to prepare a set of books for the partnership for the years 1944 to 1946, inclusive, and to reconstruct partnership net income for those years. B. Facts Relating to the N.F.W. Partnership Norman and Foulke formed the new partnership on January 1, 1946, in order to bring Warten into the firm. The N.F.W. partnership merely continued the law business previously carried on by the N.F. partnership. The facts, as set forth above, relating to the conduct of the N.F. partnership are applicable, also, to the N.F.W. partnership, and need not be restated. Norman *272 and Foulke controlled the N.F.W. partnership. Warten, who had been discharged from the military service just prior to the formation of the partnership, was a junior partner with a 20 per cent interest. The N.F.W. partnership return for 1946 was prepared by Foulke on a cash basis. The reported, and the stipulated net income of the partnership was $13,751.32, and $17,258.04, respectively. The understatement of net income in the return of $3,506.72, resulted from an understatement of gross receipts in the amount of $443.91, and the taking of deductions for expenses which could not be substantiated in the amount of $3,062.81. Facts Relating to Foulke The reported, and the correct taxable net income of petitioner Foulke, and the amount of net income which was understated in the return, in each of the years 1944 to 1946, inclusive, was as follows: Net
Net
Understate-
Income
Income
ment of Net
Per
as
Income
Year
Return
Stipulated
in Return
1944
$ 6,391.04
$ 7,607.27
$1,216.23
1945
6,464.20
9,964.40
3,500.20
1946
11,096.71
14,637.51
3,540.80
Totals
$23,951.95
$32,209.18
$8,257.23 The stipulated net income for each of the years *273 1945 and 1946, is the same as the net income which was determined by the respondent in the notice of deficiency. The difference between the reported, and the correct taxable net income of Foulke and his wife for the year 1944 is due, almost entirely, to the understatement of net income, in the amount of $1,215.54, received by Foulke from the Norman and Foulke partnership. For the years 1945 and 1946, the discrepancy between reported, and actual net income results from the following adjustments made by the respondent and agreed to by Foulke: 1945
1946
Increases in net income from
partnerships: Norman & Foulke
$3,350.20
$1,022.83
Norman, Foulke & Warten
1,402.69
Unallowable deductions: Luxury taxes
150.00
Excise taxes
165.28
Casualty loss (theft)
600.00
Misc. deductions (cost of
appeal in Hebbard case)
350.00
Totals
$3,500.20
$3,540.80 Foulke prepared his return for each of the taxable years. Facts Relating to Warten The reported and the correct taxable net income of Warten for the year 1946 was $2,274.01, and $3,100.61, respectively. The understatement of net income in the return of $826.60, resulted from an increase of $676.60 *274 in Warten's share of the income of the N.F.W. partnership, and the disallowance by respondent of a deduction taken in the return of $150. Ultimate Facts The net income of the N.F. partnership for each of the years 1944 to 1946, inclusive, and of the N.F.W. partnership for the year 1946, was fraudulently understated in the respective partnership returns of income. Norman filed a false and fraudulent return for the year 1941. Part of the deficiency for each year in Docket No. 24251, Kelsey Norman, and in Docket No. 24250, Kelsey and Ruth N. Norman, is due to fraud with intent to evade tax. Part of the deficiency for each year in Docket No. 24249, Emerson and Margaret Foulke, is due to fraud with intent to evade tax. No part of the deficiency for the year 1946 in Docket No. 24248, Henry Warten, is due to fraud with intent to evade tax. Opinion The petitioners concede that their income, respectively, was understated, and that there are deficiencies for each of the years involved. The parties have stipulated the correct amounts of their taxable net income for each of the years involved. The petitioners contest the respondent's determinations of fraud. The respondent has *275 the burden of proving fraud by clear and convincing evidence. Whether the respondent has met his burden of proof is to be determined from a consideration of the entire record. [1]
The respondent's determination of fraud in the case of Norman is based on the repeated understatements by Norman, in substantial amounts, of his net income from his individual law practice, and from the partnerships of which he was a member. Also, in his return for some of the years involved, Norman claimed deductions in substantial amounts, which he could not substantiate upon audit of the returns. The respondent's determinations of fraud in the cases of Foulke and Warten are based upon their understatements of net income received from the law partnerships of which they were members. Issue 1. We will consider first the issue of whether the petitioner Kelsey Norman filed a false or fraudulent return for the year 1941, and whether any part of the deficiency in his income tax for each of the years 1941 through 1946, inclusive, is due to fraud with intent to evade *276 tax. If a false or fraudulent return was filed for the year 1941, the assessment of a deficiency for that year is not barred by the statute of limitations. If a part of the deficiencies for the years 1942 and 1943 is due to fraud with intent to evade tax, the 75 per cent forgiveness feature provided for in section 6 of the Current Tax Payment Act of 1943 cannot be applied. Norman conducted his law practice as an individual during the years 1941 to 1943, inclusive, and until May 1, 1944, on which date he entered into a law partnership on an equal basis with Foulke. He continued, however, to receive income from his individual law practice during the years 1944 and 1945 as the partnership agreement with Foulke applied only to new business. That is to say, it was agreed between Norman and Foulke that any fees received by either from cases which were on hand when the partnership was formed were to remain the separate property of each of the partners. In addition to the income received from his individual law practice in each of the years 1941 through 1945, Norman received income from law partnerships during the years 1944 to 1946, inclusive. Also, he had income from rents in each of the *277 years involved. His net income from each of the aforementioned sources was not correctly reported in his tax returns for any of the taxable years. Norman admits that his net income was understated in substantial amounts in each of the years 1941 to 1946, inclusive. He admits, also, that his records of business and personal receipts and expenditures are incomplete and inadequate, and do not reflect his true net income for any of the years in question. But he denies any deliberate plan or wilful intent on his part to evade tax, and contends that the respondent has failed to meet his burden of proof on the issue of fraud. The only explanations offered by Norman for his repeated failure to report in his returns the large amounts of income which were unquestionably received by him are that he did not know anything about bookkeeping or the preparation of income tax returns; that he relied on his secretary and office help to keep accurate records and to prepare correct tax returns for him; and that he was in ill health and absent from his office for extended periods during the years involved. We are not impressed with the petitioner's explanations. Norman is a successful attorney and *278 business man. We cannot accept protestations of ignorance concerning the keeping of accounting records, and the preparation of tax returns; and his assertions that he relied upon others, are not persuasive. No difficult or complicated problems of tax accounting are involved in these proceedings. Although petitioner contends that he did not prepare his tax returns, he admits that he read and signed the returns. A taxpayer cannot escape responsibility for filing a correct tax return by committing its preparation to others. "The return as made was [is] his return and he must suffer the consequences if it is false." Harry Feldman, 34 B.T.A. 517, 521. See, also, Irving Fisher, 30 B.T.A. 433, 443; Estate of Louis L. Briden, 11 T.C. 1095, 1135, affirmed sub nom. Kirk v. Commissioner, 179 Fed. (2d) 619. We are, likewise, unimpressed with the circumstance of petitioner's health during the period involved. It is true that Norman had a heart condition; that he was hospitalized on several occasions during the period from 1941 through 1945; and that he was advised by his doctor to stay out of court and to avoid contested cases. But, as his *279 doctor testified, Norman did not suffer any mental impairment, and he was able to, and did carry on the work of an office lawyer. Furthermore, with the exception of 1946 when Norman was more or less incapacitated from March through September, there is no evidence that he was absent from his office and unable to attend to his business affairs for extended periods of time during the taxable years. Norman's failure to come forward with any plausible explanation for the course of conduct which he pursued is strongly indicative of fraudulent intent. As was stated by this Court in Arlette Coat Co., 14 T.C. 751, 756, "Where over a course of years an intelligent taxpayer and business man has received income in substantial amounts, as shown by this record, and has failed to report that income, and where no books or records were kept by him and no tenable explanation was offered for the failure to report the income received, the burden of the respondent, in our judgment, is fully met. We think this conclusion is amply supported by authority. * * *" See, also, Rogers v. Commissioner, 111 Fed. (2d) 987; White v. United States, 20 Fed. Supp. 623; Owens v. United States, 98 Fed. Supp. 621; *280 Victor A. Dorsey, 33 B.T.A. 295; Frank A. Weinstein, 33 B.T.A. 105; Louis Halle, 7 T.C. 245, affd. 175 Fed. (2d) 500, certiorari denied, 338 U.S. 949. We are convinced, after a careful review of all the evidence that Norman deliberately pursued a course of conduct calculated to deceive the Government and to evade taxes. The whole fabric of petitioner's tax accounting was permeated with gross error. See M. Rea Gano, 19 B.T.A. 518, 533. It is significant that neither he nor his accountant was able to give any explanation of how the amounts of gross and net income from Norman's individual law practice which were set forth in his returns were computed. We do not have in evidence Norman's accounting records. However, there is testimony which clearly establishes that the amounts which were reported in the returns, as professional income from Norman's individual law practice, could not be related to or reconciled with the accounting records which were kept. Other evidence of Norman's false pattern of tax accounting is present. In each of the years 1941 through 1945, Norman received substantial amounts of *281 fees which were neither deposited in his bank account nor entered in his accounting records. He took large deductions in his returns, particularly in the return for 1946, which he could not substantiate, and which he now concedes were improper. As discussed hereinafter, he fraudulently understated his true net income from the partnerships of which he was a member in his returns for the years 1944 to 1946, inclusive. We need not extend the opinion with a discussion of other evidence in the record indicative of fraudulent intent. It is sufficient to observe that the discrepancies between Norman's reported, and his correct taxable net income during the period under review were too large, too many, and too persistent to have been overlooked, or to have occurred without guilty knowledge on his part coupled with an intention to evade tax. We conclude that the respondent has sustained his burden of proof on the issue of fraud. It is held that Norman filed a false and fraudulent return for the year 1941, and that a part of the deficiency for each of the years 1941 to 1946, inclusive, is due to fraud with intent to evade tax. Issue 2. The remaining question is whether any, or all of *282 the petitioners, fraudulently understated in their respective individual returns, their share of the net income of the N.F., and the N.F.W. partnerships, in any of the years 1944 through 1946. The respondent's determinations of fraud for each of the years 1944, 1945, and 1946, in the case of Foulke, and for the year 1946, in the case of Warten, are based upon their understatements of net income received from the partnerships of which they were members. A. The N.F. Partnership. Norman and Foulke admit that the net income of the N.F. partnership, for each of the years 1944 to 1946, inclusive, was understated in substantial amounts in the partnership returns of income, and in their respective individual returns for those years. They contend that while they may have been grossly negligent in accounting for and reporting partnership income, there was no intent on their part to evade tax. We do not agree. What was stated by this Court in M. Rea Gano, supra, p. 533, is pertinent here: "* * * It is but a short step from carelessness, indifference to accuracy, and slipshod practice such as characterized the dealings of taxpayer with the Government to the fraudulent evasion *283 of taxes. That petitioner took that step we believe fully appears in the record in this case. * * *" That petitioners concede that the informal accounting records of income and expenses which were kept for the partnership were incomplete, and that they did not accurately reflect the true net income of the partnership in any of the years in question. Petitioners admit to a practice of dividing cash fees as they were received in the office, without making any entries for such fees in the partnership accounting records. Foulke, who prepared the partnership returns, admits that a part, or all, of the cash fees which were received in 1944 and 1945, were "estimated" in the partnership returns for those years. In each of the years 1944 through 1946, deductions amounting to $1,420, $7,312, and $3,623, respectively, were taken in the partnership returns which could not be substantiated, and which the partners now concede were improper. The petitioners have offered no explanation for the admitted understatements of partnership net income. The cumulative effect of these facts is, in our opinion, evidence of more than gross negligence. The inescapable conclusion to be drawn from all the evidence, *284 which we have carefully reviewed, is that Norman and Foulke, knowingly and with a fraudulent intent to evade tax, understated the true net income of the partnership in the partnership returns and in their respective individual returns for each of the years 1944 to 1946, inclusive. B. The N.F.W. Partnership. What we have said with respect to the N.F. partnership applies with equal force and effect to the N.F.W. partnership. The latter was merely a continuation of the former. The N.F.W. partnership was formed on January 1, 1946, in order to bring Warten into the law firm as a junior partner. The partnership was controlled and managed by Norman and Foulke. The same false pattern of accounting for and reporting partnership income as prevailed with respect to the N.F. partnership was followed in the N.F.W. partnership. The partnership net income for 1946 was admittedly understated in a substantial amount. The informal accounting records which were kept for the partnership were incomplete and accurate. Cash fees were divided among the partners as they were received, and no record of such cash fees was made in the partnership accounting records. Deductions of $3,062.81 were taken in *285 the partnership return for 1946 which could not be supported upon audit of the return, and which the partners now concede were excessive. The N.F.W. partnership return for 1946 was prepared by Foulke. The tax liability of petitioners was under investigation by revenue agents for almost a year prior to the date on which the return was filed. The testimony of Dore, one of the examining agents, establishes that Norman and Foulke were advised by the agents, and admitted, that the accounting records which were kept for the partnership were inaccurate and incomplete. Notwithstanding this, a partnership return was filed, which the petitioners now concede was incorrect, and which they now admit contained an understatement of partnership net income. We can find in this record neither excuse nor explanation for the conduct of Norman and Foulke in accounting for and reporting partnership income. With respect to Warten, the evidence shows that he had nothing to do with the preparation of the partnership return, or with the keeping of partnership accounting records. He was a junior partner who apparently had little voice in the conduct of partnership affairs. Although, as a partner, he shares *286 responsibility for the conduct of partnership affairs, there is no evidence of fraudulent intent so far as Warten is concerned. We conclude that Norman and Foulke, knowingly, and with a fraudulent intent to evade tax, understated the net income of the N.F.W. partnership for the year 1946 in the partnership return of income and in their respective individual returns for 1946. The petitioner, Foulke, in his returns for each of the years 1944, 1945, and 1946, fraudulently understated his true net income from the partnerships of which he was a member. Therefore, a part of the deficiency in his tax for each of the years 1944, 1945, and 1946, is due to fraud with intent to evade tax. Petitioner, Warten, does not contest the deficiency in his income tax for 1946 as determined by the respondent. The respondent has failed to prove that a part of the deficiency is due to fraud with intent to evade tax. The respondent's determination of fraud in the case of petitioner Warten is reversed. Decision will be entered in Docket 24248 that there is a deficiency in income tax for 1946 in the amount of $168.47, but that no penalty is due under section 293(b). Decisions will be entered under *287 Rule 50 in Docket Nos. 24249, 24250 and 24251. Footnotes
*. Total of items marked equals $3,387.73.↩
**. The deduction for medical expense was increased by $8.97.↩
*. One group of deductions in the return totaled $3,387.73, of which $469 were allowed in the stipulation of the parties, and $2,918.73 were disallowed. ↩
1. See L. Schepp Co., 25 B.T.A. 419; William W. Kellett, 5 T.C. 608; Wallace H. Petit, 10 T.C. 1253↩.