George L. Cowarde, Jr. v. Commissioner.
Cowarde v. Commissioner
Docket No. 3556-67.
United States Tax Court
T.C. Memo 1968-158; 1968 Tax Ct. Memo LEXIS 141; 27 T.C.M. (CCH) 771; T.C.M. (RIA) 68158; July 24, 1968. Filed George L. Cowarde, Jr., pro se, Pittsburgh, Pa. Joseph M. Abele, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following income tax deficiencies and additions to tax against the petitioner. Addition to TaxSec. 6653(b),
Year
Deficiency
I.R.C. 1954
1963
$518.55
$259.28
1965
372.34
Respondent has made certain concessions in his brief with respect to deduction for charitable contributions and for safety clothing and equipment. The issues remaining for decision are: 1. Whether petitioner is entitled under section 165, Internal Revenue Code of 1954, [1] to deductions of $1,225 for a mink stole and $600 for clothing and cash claimed 772 to have been stolen from his automobile in the year 1963. 2. Whether petitioner is entitled under section 165 to deductions in 1965 for a casualty loss of $1,400 claimed on his tax return and a theft loss of $1,200 claimed at the trial. 3. Whether petitioner *143 is entitled under section 170 to deductions for charitable contributions in excess of the amounts allowed by respondent for 1963 and 1965. 4. Whether petitioner is entitled under section 162 to deductions for safety clothing and equipment in excess of the amounts conceded by respondent for 1963 and 1965. 5. Whether petitioner is entitled to deductions for medical expenses under section 213 in the amounts of $152.53 for 1963 and $459 for 1965. 6. Whether petitioner is liable for an addition to tax for fraud under section 6653(b) for the year 1963 by claiming a false deduction on his Federal income tax return for a theft loss of a mink stole. Findings of Fact George L. Cowarde, Jr. (herein called petitioner) was a legal resident of Pittsburgh, Pennsylvania, when he filed his petition in this proceeding. Petitioner filed his Federal income tax returns for the years 1960 through 1965 with the district director of internal revenue at Pittsburgh, Pennsylvania. Petitioner is an employee of United States Steel Corporation. Claimed Theft or Casualty Losses In 1963 petitioner's Pontiac automobile was stolen. The automobile did not contain a mink stole claimed to have been owed *144 by his wife. Petitioner claimed a deduction of $1,225 on his 1963 Federal income tax return for a theft loss of a mink stole. Petitioner falsely stated to Stanley C. Swiatek, an internal revenue conferee, that the stolen Pontiac contained a mink stole and that the stole was not in the car when it was recovered. Swiatek requested verification of the purchase of the mink stole and received from petitioner on or about May 5, 1966, a transmittal note and a copy of a sales receipt. Petitioner had altered the sales receipt in the following respect: (1) The top had been cut off; (2) on the first line the word "Natural" had been written in and the word "Sample" had been written over the partially erased word "Used"; (3) the numbers on the right-hand side of the receipt were changed, particularly the first number which had $1,000 added to $225 to make a total of $1,225; (4) the right-hand side of the receipt was torn; (5) the numbers 500 and 700 (charge balance) were added to the bottom of the receipt; and (6) "American Furs" was written in the left-hand side of the receipt and pencil obliterations were made on the back of the receipt so that the words "Riviera Furs" could not be read. *145 Petitioner did not deny that he had tampered with the sales receipt when asked by Swiatek. He did not deny at the trial that he altered the sales receipt. Petitioner fraudulently intended to mislead respondent by altering the sales receipt in such a manner as to make it difficult to ascertain its source. As part of a scheme to commit fraud, petitioner presented an altered sales receipt to respondent as substantiation for his wife's ownership of the mink stole claimed to have been stolen from his automobile. He attempted to conceal his fraud by presenting a false document to respondent's agent. Petitioner intended to defraud the revenue by claiming a false deduction of $1,225 for the theft of a mink stole which was reserved on "lay away" and was returned to stock when petitioner failed to pay the balance of the purchase price. Petitioner's wife never owned the mink stole. Petitioner falsely claimed that there was cash in the automobile when it was stolen. Neither he nor his wife had money or clothing in the car at that time. Petitioner did not suffer a theft loss of a ring in 1965. He failed to prove that he suffered a casualty loss to his freezer and food contained therein in *146 1965. He failed to prove that he suffered a casualty or theft loss for a suit of clothes in 1965. He suffered no damage to his home in 1965 beyond ordinary wear and tear. Petitioner is not entitled to any claimed casualty or theft losses in the years 1963 and 1965 except to the extent previously allowed by respondent. Claimed Charitable Contributions Martha Cowarde, petitioner's wife, regularly attended services at the Shiloh Baptist Church during 1963 and 1965. Petitioner 773 did not attend. Martha made weekly contributions to the church totaling $74 in 1963 and $47 in 1965. In addition, she made a Woman's Day offering of $26 in 1963 and $15 in 1965. Petitioner overstated Martha's contributions to the Shiloh Baptist Church when he claimed contributions on his Federal income tax return of $300 in each of the years 1963 and 1965. Petitioner made contributions to the United Fund of $51.89 in 1963 and $70.39 in 1965. He made miscellaneous charitable contributions of $10 in 1963 and $10 in 1965. Claimed Deductions for Safety Clothes and Equipment United States Steel Corporation requires that employees working on open hearth furnaces wear heat-resistant outer clothing *147 consisting of green shirts and pants. The company pays one-half the cost. In addition, the employee is required to have safety glasses and safety shoes. Petitioner paid not more than $48.40 in each of the years 1963 and 1965 for safety clothing and equipment. He claimed $75 and $60, respectively, on his income tax returns for 1963 and 1965. At the trial he claimed $225 and $200, respectively. Claimed Medical Expenses United States Steel Corporation makes payments to provide Blue Cross and Blue Shield insurance benefits for union employees of the company in accordance with the union contract. Petitioner was a union employee in 1963 and 1965. U.S. Steel made payments for Blue Cross and Blue Shield insurance for petitioner in 1963 and 1965. Dr. Patrick J. Hughes was a surgeon who practiced at Homestead Hospital in 1963 and until July 1965, when he became ill and ceased practicing. Petitioner paid Dr. Hughes $3 for medical services in 1963. He made no payments for medical services to Dr. Hughes in 1965. Petitioner falsely claimed medical payments to Dr. Hughes of $300 in 1963 and $325 in 1965. Petitioner was admitted to Homestead Hospital on December 10, 1963, for a hernia operation. *148 He was discharged from the hospital on December 24, 1963. Of the total bill of $446.25, petitioner paid $4.25 and Blue Cross of Western Pennsylvania paid $442. Petitioner is not entitled to any deduction for medical expenses in 1963 and 1965 since the total amount paid in each year was less than 3 percent of adjusted gross income. Ultimate Findings 1. Petitioner consistently and falsely overstated deductions, consisting of casualty and theft losses, charitable contributions and medical expenses, as part of a scheme to minimize his Federal income taxes. 2. For the year 1963 a part of the underpayment of tax by petitioner was due to fraud with intent to evade tax and his Federal income tax return for that year was a false and fraudulent return with intent to evade tax. Opinion 1. Claimed Theft and Casualty Losses. Section 165 provides that a deduction shall be allowed for any loss sustained during the taxable year from fire, storm, shipwreck and other casualty or from theft on losses of property not connected with the taxpayer's trade or business. The amount of the allowable deduction is the adjusted basis of the property as determined pursuant to section 1011. With respect *149 to a theft, section 1.165-8(c), Income Tax Regs., provides that the amount deductible is an amount equal to the fair market value of the property immediately before the theft. As to a casualty, section 1.165-7(b)(1), Income Tax Regs., provides that the amount of the loss is the lesser of the adjusted basis prescribed in section 1011 or the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty. As to the year 1963, petitioner claimed theft losses on his income tax return consisting of a mink stole ($1,225) and clothing and money ($600). Although petitioner was given a full opportunity to present his case, he appeared as his sole witness and thus chose to rely only on his own testimony. We regard his testimony as incredible. Petitioner was evasive, inconsistent, contradictory, and untruthful. He repeatedly refused to answer questions asked by respondent's counsel on cross-examination by stating: "I have nothing to say." There is uncontroverted evidence in this record that there was no mink stole in petitioner's car when it was stolen. Nor was *150 there any money or clothing in the car at that time. Petitioner has completely failed to prove the claimed theft losses in 1963. 774 As to the year 1965, petitioner claimed a casualty loss of $1,400 on his tax return. Respondent disallowed $1,196.58 - $996,58 because of lack of substantiation and $200 because of the $100 limitation on each of two automobile casualty losses. The notice of deficiency explains the disallowance as follows: Casualty loss claimed
$1,400.00
Less: Loss on 1957 Chryslwer
$250.00
$100.00 limitation 100.00
Deductible loss
$150.00
Loss on 1963 Pontiac
$153.42
$100.00 limitation 100.00
Deductible loss $ 53.42
$ 203.42
Adjustment $1,196.58 It thus appears that the only casualties suffered by petitioner in 1965 were automobile accidents and respondent has correctly allowed deductions for both of them. Petitioner testified that he lost "a ring worth $1,200." But this testimony conflicts with what petitioner said on cross-examination and with what he originally told Harry Worrall of the internal revenue service. At a conference petitioner told Worrall that the $1,400 was composed of the following *151 items: Item
Amount
Two automobiles
$403.42
Freezer damage
128.39
Food spoilage
400.00
Suit loss
140.00
Roof damage
(unknown) Nothing was said to Worrall about the theft loss of a "gold ring." Respondent suggests, and we agree, that no one took a $1,200 ring from petitioner in 1965. Petitioner apparently mentioned the first thing that came to his mind when the Court asked him to explain the claimed $1,400 casualty loss. Obviously he did not remember that he had told Worrall the amount of $1,400 was composed of different items. In view of petitioner's proclivity for claiming false casualty loss deductions, it seems highly unlikely that he would have overlooked claiming the loss of a $1,200 ring on his tax return. Petitioner completely failed to prove that he is entitled to any casualty or theft losses for 1965 other than those already allowed by respondent. 2. Claimed Charitable Contributions. Petitioner has the burden of proving that he made charitable contributions in the amounts claimed. Max Kralstein, 38 T.C. 810, 819 (1962). He claimed contributions to the Shiloh Baptist Church in the amount of $300 in each of the years 1963 and 1965. *152 William Arvin, chairman of the trustees of the church, testified that the church records show that Martha contributed $74 in 1963 and $23.50 for the first 6 months of 1965. Respondent concedes that $23.50 was also contributed in the last 6 months of 1965. In addition, contributions of $26 in 1963 and $15 in 1965 were made by Martha at the Woman's Day rally. Thus the evidence and concessions reflect church contributions totaling $100 in 1963 and $62 in 1965. Respondent concedes that petitioner contributed $51.89 and $70.39 to the United Fund in 1963 and 1965, respectively. These amounts are based upon the payroll deduction authorization card at U.S. Steel authorizing a deduction of 6 percent of petitioner's pay for the United Fund. Finally, petitioner claimed miscellaneous charitable deductions of $50 for 1963 and $75 for 1965. In the absence of credible evidence showing to which organizations amounts were paid, we have allowed only the $10 for each year which has been conceded by respondent. 3. Deductions for Safety Clothing and Equipment. Section 162 allows a deduction for ordinary and necessary expenses incurred in carrying on a trade or business. Uniform and work clothes *153 are deductible of (1) they are required as a condition of employment and (2) they are not of a type adaptable to general or continued use to the extent they take the place of ordinary clothing. See Mim. 6463, 1950-1 C.B. 29. Petitioner claimed expenses for safety clothes, glasses, and shoes of $75 in 1963 and $60 in 1965. On the evidence presented we conclude that $48.40 should be allowed for each year. 4. Claimed Medical Expenses. Section 213 allows medical expenses to be deducted only to the extent they exceed 3 percent of the taxpayer's adjusted gross income. Petitioner has the burden of proving his medical expenses. He claimed medical deductions on his tax returns of $152.53 for 1963 and $221.52 for 1965. He computed his claimed medical deduction in 1963 by adding $70 for drugs, $50 for Dr. Maddy, and $300 for Dr. Hughes, subtracting the 3 percent limitation without considering the 1 percent 775 drug limitation. For the year 1965, petitioner claimed drug expenses of $114 in excess of the 1 percent limitation, $325 for Dr. Hughes, and other expenses of $148. Respondent did not allow petitioner any medical deduction for the years 1963 and 1965. James Wriede, *154 supervisor of personnel services at the Homestead Works of U.S. Steel, testified that the company pays the premiums on Blue Cross and Blue Shield insurance. U.S. Steel provides this coverage to employees as a result of a union contract. Petitioner's insurance coverage through Blue Cross and Blue Shield did not lapse in the years 1963 and 1965. Wriede's testimony is corroborated by an affidavit from Blue Cross of Western Pennsylvania and its attached exhibit, which reflects that Blue Cross paid a 1963 bill for petitioner in the amount of $442 at the Homestead Hospital. It is undisputed that petitioner was admitted to Homestead Hospital on December 10, 1963, for a hernia operation, and that he was discharged on December 24, 1963. The parties agree that Dr. Patrick J. Hughes performed the operation. The amounts claimed by petitioner as paid to Dr. Hughes in his income tax returns for the taxable years 1963 and 1965 are incorrect. The records of Dr. Hughes reflect that petitioner made a payment of only $3 to him in the year 1963 and that petitioner made no payments to him in the year 1965. We note that petitioner claimed medical expenses of $450 in 1964 and a medical deduction of $273.52 *155 which were not questioned by respondent. Petitioner submitted no evidence as to the other medical expenses claimed in his tax returns for 1963 and 1965. Accordingly, he failed to meet his burden of proof as to such items. At the trial petitioner presented a copy of a bill from Homestead Hospital for $446.25 in an attempt to support an additional amount for medical expenses claimed for the year 1963. He said he did not know exactly how much of the bill he had paid. Actually, Blue Cross of Western Pennsylvania paid $442 and the petitioner paid $4.25 of which $3 was a personal charge for telephone calls. On this record we hold that the petitioner is not entitled to any medical deductions for the years in issue. He did not pay the medical expenses claimed to have been paid during these years. His allowable medical expenses did not exceed the 1 percent and 3 percent limitations provided under section 213. 5. Addition to Tax for Fraud. The burden of proving fraud is upon respondent, section 7454(a) of the Code, and he must establish by clear and convincing evidence that at least a part of the underpayment of tax for the year 1963 was due to fraud with intent to evade tax. Arlette Coat Co., Inc., 14 T.C. 751 (1950); *156 Lawrence Sunbrock, 48 T.C. 55 (1967); and Cefalu v. Commissioner, 276 F. 2d 122 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court. In Luerana Pigman, 31 T.C. 356, 370 (1958), we discussed the quantum of proof necessary to find fraud and stated: It should be noted at the outset that our conclusion in these respects must be based upon consideration of the entire record properly before us, and that we are not limited to a consideration of respondent's affirmative evidence. Frank Imburgia, 22 T.C. 1002 (1954); Wallace H. Petit, 10 T.C. 1253 (1948); L. Schepp Co., 25 B.T.A. 419 (1932). We also recognize that in this, as in many fraud cases, the proof of fraud, if it is to be established, must depend in some aspects upon circumstantial evidence. Fraudulent intent can seldom be established by a single act or by direct proof of the taxpayer's intention. It is usually found by surveying his whole course of conduct and is to be adduced as any other fact from all the evidence of record and inferences properly to be drawn therefrom. M. Rea Gano, 19 B.T.A. 518 (1930). There is no doubt in *157 our minds that on this record respondent has proved fraud by clear and convincing evidence. [2] Petitioner falsely represented both ownership and 776 theft of his wife's mink stole in his tax return and to respondent's agents. Cf. John McKeon, 39 B.T.A. 813, 820, 821 (1939). He also attempted to substantiate the claimed theft by presenting a false and altered sales receipt to respondent's agents in what we regard as a deliberate scheme to defraud. See Spies v. United States, 317 U.S. 492, 499 (1943); Carlton Building Co., 29 B.T.A. 599, 600 (1933); *158 Chesterfield Textile Corporation, 29 T.C. 651, 664 (1958). And petitioner even attempted to mislead respondent's counsel and the Court with testimony unworthy of belief. Petitioner's vague and unsure answers as to the dealer from which the mink stole was allegedly purchased are indicative of fraud. Harry Feldman, 34 B.T.A. 517, 522 (1936). Moreover, the failure of petitioner to call his wife as a witness to corroborate his testimony creates a presumption that her testimony would have been unfavorable to him. W. A. Shaw, 27 T.C. 561, 573 (1956), and authorities cited therein. We think respondent, through his witnesses and documentary evidence, thoroughly exposed the false and fraudulent nature of petitioner's claim that there was a theft of the mink stole. In addition, we find the evidence convincing that petitioner claimed incorrect casualty losses, charitable contributions, and medical expenses as part of a fraudulent and consistent practice of claiming excessive deductions over a period of years. This is likewise a badge of fraud. M. Rea Gano, 19 B.T.A. 518, 533 (1930). Accordingly, we have concluded and found as an ultimate *159 fact that part of the underpayment of tax for the year 1963 was due to fraud. The addition to tax under section 6653(b) is sustained. To reflect concessions made by respondent and our conclusions on the disputed issues, Decision will be entered under Rule 50. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. We have carefully carefully read and considered the document filed by petitioner with the Court on June 27, 1968, which has been treated as his brief. The document makes no attempt to discuss the merits of the issues involved herein. It merely sets forth a number of highly questionable statements and charges for which there is no foundation in this record. In our view the petitioner is simply trying to lay down an irrelevant smokescreen for his fraudulent actions. Suffice it to say that in this case, like all others, this Court has endeavored to apply fair standards of justice in accordance with the law and the evidence presented.↩