WILLIE C. ROBINSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ROBINSON v. COMMISSIONER
Docket No. 29506-82.
United States Tax Court
T.C. Memo 1984-188; 1984 Tax Ct. Memo LEXIS 484; 47 T.C.M. (CCH) 1510; T.C.M. (RIA) 84188; April 16, 1984. Willie C. Robinson, pro se. David Goldberg, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: this case was assigned to and heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7456(c) [1] and General Order No. 8 of this Court, 81 T.C. XXIII (1983). After review of the record, we agree with and adopt his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: Respondent determined deficiencies in petitioner's 1979 and 1980 Federal income taxes in the amounts of $4,163.84 and $5,665.64, respectively. In his Amendment to Answer filed February 6, 1984, respondent also seeks additions to tax pursuant to section 6653(b) in the *486 amounts of $2,081.92 and $2,832.82 for the taxable years 1979 and 1980, respectively. The issues for decision are: 1. Whether petitioner is entitled to a deduction for claimed medical and dental expenses for the taxable years 1979 and 1980; 2. Whether petitioner is entitled to a deduction for claimed miscellaneous expenses in excess of the amounts allowed by respondent for the taxable years 1979 and 1980; 3. Whether petitioner is entitled to claimed dependency exemptions for the taxable years 1979 and 1980; 4. Whether petitioner is entitled to a claimed child care credit for the taxable years 1979 and 1980; 5. Whether petitioner is entitled to claim head of household status for the taxable years 1979 and 1980; 6. Whether petitioner is entitled to claimed interest expense deductions for the taxable years 1979 and 1980; 7. Whether petitioner is entitled to a deduction for sales tax in excess of the amount allowed by respondent for the taxable year 1979; 8. Whether petitioner is entitled to a political contribution credit in excess of the amount allowed by respondent for the taxable years 1979 and 1980; 9. Whether petitioner is entitled to claimed charitable *487 contributions for the taxable years 1979 and 1980; 10. Whether petitioner is entitled to a bad debt deduction claimed for the taxable year 1980; 11. Whether petitioner is entitled to a deduction for a claimed casualty loss for the taxable year 1980; and 12. Whether petitioner fraudulently and with intent to evade tax understated a part of his income tax liability for the taxable years 1979 and 1980, thereby rendering him liable for the addition to tax under section 6653(b). At the time of filing the petition herein, petitioner resided at Roosevelt Long Island, New York. Some of the facts have been stipulated and those facts are so found. Petitioner timely filed his Federal income tax returns for the taxable years 1979 and 1980. For the years in issue, petitioner was employed as a conductor for the Long Island Railroad Company. The parties stipulated to numerous documents which had been submitted by petitioner to agents of respondent during the examination of his income tax returns. Respondent did not agree that the documents were authentic, but merely that they had been submitted by petitioner in an attempt to substantiate some of the claimed deductions. Respondent *488 presented evidence in an attempt to show that some of these documents were altered and that other documents were false and fictitious. 1. Medical and Dental Expenditures for 1979 and 1980
Petitioner claimed the following medical and dental expenses for the years in issue: Payee
1979
1980
Beekman Hospital
$ 350
[1] $ 700
Dentist
400
Dr. Jessica
415
Dr. Sanford Leff
275
Travel, parking, tolls
85
Medical insurance premiums
[1] 150
Dr. Cole
[2] 275
Dr. Greene
[2] 175
Dr. Marda
40
Dr. Kearney
185
Dr. Levine
220
Total
$1,525
$1,745
Respondent disallowed all of the aforementioned claimed medical and dental expenses for lack of substantiation. The burden of proof to establish entitlement to deductions is on petitioner. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Petitioner was unable to offer any credible testimony or documentation with respect to payments for medical and dental expenses (other than a payment of $175 to Dr. Cole *489 and a payment of $75 to Dr. Greene). In addition, respondent offered substantial evidence which established that petitioner did not incur some of the claimed expenses. For example, based on testimony of Dr. Sanford Leff, we find that petitioner was never a patient of this doctor nor did petitioner ever pay any funds to Dr. Leff for medical care. The testimony of other witnesses of the respondent revealed that some of the medical expenses claimed were in fact fictitious names and addresses. Petitioner was unable or unwilling to explain these discrepancies and inconsistencies. Accordingly, petitioner is not entitled to any deduction for medical and dental expenses other than the $175 payment to Dr. Cole and the $75 payment to Dr. Greene, subject, of course, to the percentage limitations of section 213. 2. Miscellaneous Deductions
Petitioner claimed the following miscellaneous deductions for the years in issue: 1979
1980
Item
Claimed
Allowed
Claimed
Allowed
Union dues
$ 470
$431.40
$ 470
$470
Tax preparation
50
75
Uniform, shoes &
maintenance
[1] 700
500
Masonic dues
150
120
Telephone for work
150
Total
$1,370
$431.40
$1,315
$470
*490 Section 162 allows a deduction for ordinary and necessary expenses incurred in carrying on a trade or business. The burden is on petitioner to prove entitlement to the claimed deductions. Rule 142(a). The record reveals that petitioner did incur some expenses for uniform maintenance in 1979 and 1980 and some telephone expense in 1980. We are satisfied that petitioner was required to have his uniforms cleaned periodically and that this would be a deductible expense. [2] Furthermore, petitioner was required to make and receive telephone calls with respect to his availability for work. Thus a portion of his telephone expense would be deductible. While the evidence substantiating these expenditures was not entirely satisfactory, using our best judgment we allow petitioner $200 for uniform maintenance for each of the years 1979 and 1980, and $50 for telephone expense for the taxable year 1980. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Petitioner was unable to support the remainder of the claimed deductions and, accordingly, *491 respondent's disallowance is otherwise sustained. 3. Dependency Exemptions
On his returns for the years in issue, petitioner claimed dependency exemptions as follows: 1979
1980
Relationship
Relationship
Name
to Petitioner
Name
to Petitioner
Andrette [1]
Child
Andrette
Child
Karen [2]
Child
Jeffrey
Child
Myron [2]
Child
Maurice [3]
Sharon [3]
James
Grandchild [4]
Jeffrey [5]
Child
Estella Robinson
Mother
Petitioner's testimony concerning these claimed deductions was vague and confusing. Furthermore, in an attempt to substantiate claimed dependency exemptions for his mother, Estella Robinson, petitioner submitted money order stubs on which he wrote in the amount and the name of the payee. Respondent presented photocopies of these money orders. The photocopies *492 show that the money orders were made out to persons other than Estella Robinson. Petitioner could offer no explanation as to this inconsistency. Evidence established that some of the persons claimed did not reside with petitioner. Respondent is thus sustained in his determination that petitioner is entitled to no dependency exemptions for either of the years in issue. 4. Child Care Credit
Petitioner claimed a child care credit for the taxable years 1979 and 1980 in the amounts of $500 and $400, respectively. At trial, petitioner conceded that he was not entitled to the child care credit for the taxable year 1979. With respect to the child care credit for 1980, petitioner offered no evidence to support this claim.Accordingly, respondent's determination is sustained. 5. Head of Household Filing Status
For both of the taxable years in issue, petitioner claimed head of household filing status. Based upon our discussion above of the dependency exemption deduction issue, it is clear that petitioner would not be entitled to such status. Petitioner offered no evidence on this matter and, accordingly, respondent's determination is sustained. Sec. 2(b); Rule 142(a). *493 6. Interest Expense
For the taxable years in issue, petitioner claimed the following amounts as interest expense: Payee
1979
1980
Chemical Bank (on judgment)
$130
Credit Union
500
502
Department store cards
110
Chemical Bank
400
Total
$740
$902
From the limited evidence on this issue, we are satisfied that petitioner is entitled to a deduction for interest paid to his credit union in the amount of $415.13 for the taxable year 1979 and $328.61 for the taxable year 1980. Petitioner has otherwise failed to prove that he is entitled to deductions for any additional amounts and, accordingly, respondent is sustained with respect to the remainder of the disallowance. Rule 142(a). 7. Sales Tax Deduction
On his 1979 return, petitioner deducted $560 as a sales tax deduction. Respondent reduced the amount of the allowable deduction based upon the sales tax tables and treated petitioner as living alone and having no dependents. Petitioner presented no evidence on this matter and, accordingly, respondent's determination is sustained. Rule 142(a). See Russo v. Commissioner,T.C. Memo. 1982-248; Feistman v. Commissioner,T.C. Memo. 1982-306, *494 affd. 718 F.2d 1110 (9th Cir. 1983). 8. Political Contribution Credit
At the trial of this matter petitioner agreed that he was entitled to a political contribution credit for the taxable years 1979 and 1980 in the amount of $6 for each year, rather than $50 as claimed for each year. 9. Charitable Contributions
For the taxable years in issue, petitioner claimed the following amounts for charitable contributions: Payee
1979
1980
Cash
$ 500
Salvation Army
300
[1] 3,200
United Fund
30
25
A & M Dance
150
Jimmy Jackson Memorial Fund
310
Eastern Star Dance
120
United Negro College Fund
150
50
Church
250
St. James Church
1,050
Masonic Building Fund
600
Total
$1,810
$ 4,925
With respect to these claimed deductions, petitioner offered a minimal amount of testimony and documentation. Nevertheless, we believe and the record shows that petitioner did make some charitable contributions during the years in issue. Using our best judgment, we allow petitioner a deduction of $300 for each of the taxable years 1979 and 1980. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). *495 10. Bad Debt Deduction
On his tax return for 1980, petitioner deducted $2,800 as a bad debt. Petitioner testified that he loaned a friend $3,000 in 1980 and that $200 of that amount was repaid in that year. Petitioner further testified that his friend died on January 9, 1981, and he then determined that the loan was uncollectable. Respondent disallowed the entire amount of the bad debt deduction on the theory that petitioner had not substantiated that a loan was made and further than even if petitioner were able to establish that there was a loan, it would not have become uncollectable in 1980. In the light of the record on this issue, we are convinced that petitioner is not entitled to the claimed bad debt deduction for the taxable year 1980. Even if petitioner were able to satisfy us that a loan in fact was made in 1980 (a matter to which we have much doubt), no evidence was presented to establish that the debt became uncollectable in 1980. Rude v. Commissioner,48 T.C. 165 (1967). Accordingly, respondent is sustained on this issue. Rule 142(a). 11. Casualty Loss
For the taxable year 1980, petitioner claimed a deduction for a casualty loss *496 in the amount of $900. Petitioner testified that while his automobile was parked on April 1, 1980, another automobile hit his automobile in the right rear quarter panel. In order to substantiate the claimed deduction, petitioner presented a repair bill in the amount of $929.06. Based upon the entire record, we are satisfied that petitioner did incur a casualty loss. It is also clear from the record that a substantial portion of the repair bill relates to other dents and repair work not connected with the April 1, 1980, accident. Petitioner did not choose to seek reimbursement from his insurance company since his insurance premiums were already exceedingly high. Section 165 allows a deduction for any loss sustained during the taxable year, and not compensated for by insurance or otherwise.Using our best judgment, we conclude that petitioner did suffer a casualty loss deductible under section 165(c) in the amount of $300 before excluding the $100 as required by section 165(c)(3). Cohan v. Commissioner,supra;sec. 1.165-7(a)(2), Income Tax Regs.
12. Additions to Tax for Fraud
The burden of proving fraud is upon respondent, sec. 7454(a); Rule 142(b). *497 The issue is whether petitioner had an actual, specific intent to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax. Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968); Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). The existence of fraud is a question of fact to be determined upon consideration of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud is never presumed or imputed. Mere suspicion of fraud is not sufficient. Switzer v. Commissioner,20 T.C. 759, 765 (1953). The record as a whole leaves no doubt that respondent has proved fraud by clear and convincing evidence. Petitioner knowingly overstated his deductions. For example, petitioner claimed a $700 medical expense deduction in 1980 for the Beekman Hospital and simply conceded this deduction at trial without any explanation. Petitioner conceded that he overstated other medical expense deductions to various doctors. Petitioner claimed a deduction for charitable contributions *498 to the Salvation Army in 1980 in the amount of $3,200. At trial petitioner conceded this item without any explanation. [3]
Petitioner also attempted to substantiate many of his itemized deductions by submitting altered documents to the agents of respondent in an attempt to defraud. Petitioner submitted purported receipts from doctors' offices and hospitals showing amounts paid by petitioner in the years in issue. In fact, the evidence clearly establishes that many of these documents were false and fictitious. For example, petitioner presented a statement from Dr. Sanford Leff with respect to a visit in 1979. Dr. Leff testified that petitioner was never a patient of his. Petitioner presented a bill from Dr. Levine for the taxable year 1980 in the purported amount of $220. A representative of Dr. Levine's office testified that the bill actually read $20. Even a quick glance at this bill reveals that the digit "2" was added to the document.Petitioner submitted documents with respect to other claimed *499 deductions which were also shown to be false and fraudulent. Since respondent has shown by clear and convincing evidence that a part of the underpayment was due to fraud, we do not deem it necessary to go into detail with respect to each and every claimed false document or overstatement of each and every deduction. Suffice it to say that these overt actions are clear and sufficient indications of fraud. Estate of Mazzoni v. Commissioner,451 F.2d 197, 202 (3d Cir. 1971). [4]
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
1. Petitioner conceded at trial that he was not entitled to these deductions. ↩
2. Petitioner conceded at trial that these deductions were overstated by $100 each.↩
1. Petitioner conceded at trial that this deduction was overstated by $350, thus his claimed deduction should have been $350.↩
2. See Wildman v. Commissioner,↩ a Memorandum Opinion of this Court dated Aug. 14, 1946.
1. Betty Lapsley is Andrette's mother. ↩
2. Gloria Brooks is Karen's and Myron's mother. ↩
3. Godeny v. Commissioner,T.C. Memo. 1963-324, affd. 339 F.2d 262 (3d Cir. 1964); Jones v. Commissioner,T.C. Memo. 1978-454↩.
3. Petitioner conceded that he is not entitled to the claimed dependency exemption for these persons. ↩
4. Andrette is James' mother. ↩
5. Betty Brown is Jeffrey's mother.↩
1. Petitioner at trial conceded that he was not entitled to this amount.↩
4. See also Cowarde v. Commissioner,T.C. Memo. 1968-158↩.